UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**CHESAPEAKE OPERATING, INC.**                              **CIVIL ACTION**

**VERSUS**

**STRATCO OPERATING
COMPANY, INC.**                                              **NO. 07-354-B-M2**

## RULING & ORDER

This matter is before the Court on the Motion to Compel Stratco Operating Company, Inc.'s Discovery Responses and Production of Documents (R. Doc. 72) filed by plaintiff, Chesapeake Operating, Inc. ("Chesapeake"). Defendant, Stratco Operating Company, Inc. ("Stratco"), has not filed an opposition to this motion.

## FACTS & PROCEDURAL BACKGROUND

Chesapeake filed this suit on December 18, 2006. In the complaint, Chesapeake alleged that, under five separate instruments, each entitled "Assignment, Bill of Sale, and Convenyance" and each effective on September 1, 1999, it "granted, bargained, sold, conveyed, assigned, transferred, set over, and delivered to Stratco all of its rights, title and interest in and to five different oil and gas wells and equipment. Those five wells, all of which are located in Louisiana, are: (1) the Lottie Smith 78-1 well; (2) the Schexnayder 5-1 well; (3) the Grezaffi 19-1 well; (4) the Weyerhaeuser 19-1 well; and (5) the Weyerhaeuser SWD well. According to Chesapeake's complaint, the assignments required Stratco to abide by the terms and conditions of the underlying oil and gas leases affecting the properties. Specifically, the assignments expressly required Stratco to be responsible for, to indemnify Chesapeake, and to hold Chesapeake harmless from all claims, costs,

1

expenses, and liabilities that arise or accrue after the effective date of the assignments.

Chesapeake further alleged in the complaint that Stratco assumed ownership and control over, and took over operations at the properties at various times beginning in mid- to late-September 1999 through early January 2000.  Under both the assignments and Louisiana law, Stratco was bound to adhere to Louisiana's rules and regulations regarding the proper operating, plugging, and abandoning of the properties.  According to Chesapeake, Stratco is an experienced oil and gas operator and knew of its obligation under Louisiana law to plug and abandon the wells.

According to the complaint, Stratco began the process of plugging and abandoning operations on the properties in mid- to late- 2003, but it did not complete that process. Chesapeake contends that the Louisiana Office of Conservation advised Stratco that it needed to properly plug and abandon the five properties and that Stratco's failure to comply with that advice is a breach of the assignment agreements with Chesapeake and a violation of Louisiana law.  The State of Louisiana, acting through the Commissioner of Conservation, classified the five properties at issue as "orphaned well sites" under La. R.S. 30:80, *et seq.*, and advised Chesapeake that it had the option of either properly plugging and abandoning the properties or paying the State of Louisiana to do so.  At that point, Chesapeake made a written demand upon Stratco to plug and abandon the properties, but Stratco did not respond to Chesapeake's written demand.  As a result, Chesapeake was forced to complete the majority of the plugging and abandoning of the properties at its own labor and expense.  According to the complaint, a small amount of plugging and abandoning work remains to be done; however, Stratco continues to ignore the demands of the Louisiana Office of Conservation and Chesapeake regarding its obligations to plug

and abandon and has not contributed any money toward the cost of Chesapeake's efforts.

In this suit, Chesapeake contends that Stratco is liable for the money it spent plugging and abandoning the properties.[1]  It further asserts that, when Stratco abandoned the Weyerhauser 19-1 site, it left behind an oil spill that occurred during its ownership of the well, which it has refused to clean up despite being informed by the U.S. Environmental Protection Agency ("USEPA") that it needed to do so.  The USEPA therefore completed its own cleanup of the Weyerhauser 19-1 site.

At issue in the present motion is Chesapeake's Second Set of Interrogatories and Requests for Production of Documents, which were served upon Stratco on July 24, 2008.  Such discovery requests were designed to address deficiencies in Stratco's responses to Chesapeake's first discovery requests concerning the "arguably indistinguishable nature of Stratco; another company owned by Tom Stratton, Lakehills Production Company ("Lakehills"); and the personal finances of Tom and Jan Stratton."  Stratco's responses to Chesapeake's second set of discovery requests were due on August 28, 2008.  Stratco requested an extension of time to respond, and Chesapeake granted that request, agreeing to allow Stratco an additional month to respond, or by September 29, 2008.  When Stratco did not respond to Chesapeake's discovery requests by the September 29th deadline, counsel for Chesapeake contacted Stratco's counsel on October 8, 2008 and inquired as to why she had not yet received Stratco's responses.  On October 9, 2008, Stratco's counsel conceded that Stratco had not yet produced responses and requested another extension of an additional six (6) days, or until October 15, 2008, within which to respond.

---

[1] Chesapeake has asserted claims against Stratco for breach of the assignment contracts, for quantum meruit, and for declaratory judgment.

Chesapeake agreed to such extension, but on October 15th, Stratco's counsel left a voicemail with Chesapeake's counsel notifying her that the responses still were not complete and that Stratco needed additional time to ensure that the responses could be substantive.  Chesapeake allowed Stratco an additional week, until October 22, 2008, to submit complete responses.

On October 23, 2008, Stratco finally submitted its responses to Chesapeake's second set of discovery requests.  Upon review of those responses, however, Chesapeake's counsel found them to be deficient in a number of respects and fraught with "frivolous objections."  In particular, Chesapeake notes that "almost all" of Stratco's interrogatory responses refer to Stratco's "business records," which Stratco agreed to produce "at the offices of Stratco's counsel in Austin, Texas during the period between November 5-7, 2008."  According to Chesapeake's present motion, its counsel agreed to travel to Austin and asked that the documents be available for inspection on November 7, 2008; however, on November 5, 2008, Stratco's counsel notified Chesapeake's counsel that November 7th was no longer an acceptable date.  Ultimately, the documents were made available on November 14, 2008.

In its motion, Chesapeake explains that such "production" of documents included "boxes of well files and production files and approximately a third of a banker's box of financial documents and corporate records for Stratco."  None of the documents were bates-labeled, and according to Chesapeake, the production was "astonishingly incomplete." As a result, Chesapeake's counsel emailed Stratco's counsel and asked him to call her since he was not in his Austin office at the time of the document review.  Stratco's counsel, however, did not respond.

Chesapeake has now filed the present motion seeking to compel complete responses to its second set of discovery requests from Stratco. Relative to Stratco's responses to its interrogatories,[2] Chesapeake explains that such responses are deficient because they simply refer Chesapeake to Stratco's business records, but they fail to identify the responsive documents within those records as is required by Fed. R. Civ. P. 33(d). Furthermore, many of the interrogatory responses refer to documents that were not produced. As to Stratco's responses to its requests for production of documents,[3] Chesapeake notes that Stratco does not clarify in its responses when responsive documents do not exist by making a statement that such documents do not exist. Chesapeake requests that the Court compel Stratco, in response to each request for production for which no responsive documents exist, to make an affirmative statement to that effect.

## LAW & ANALYSIS

**I.       Stratco's Failure to File an Opposition:**

Local Rule 7.5M of the Middle District of Louisiana requires that memoranda in opposition to a motion be filed within twenty (20) days after service of the motion. The rule specifically provides:

> LR7.5M       Response and Memorandum
>
> Each respondent opposing a motion shall file a response, including opposing affidavits, memorandum, and such

---

[2] Specifically, Chesapeake takes issue with Stratco's responses to Interrogatory Nos. 3, 4, 6, 7, 8 and 9.

[3] In particular, Chesapeake contends that Stratco's responses to Request for Production Nos. 1, 3, 12-17, 23-24, 26- 29, 31, 39-43, and 49-53 are deficient.

5

> supporting documents as are then available, within 20 days after service of the motion. Memoranda shall contain a concise statement of the reasons in opposition to the motion, and a citation of authorities upon which the respondent relies. For good cause appearing therefor, a respondent may be required to file a response and supporting documents, including memoranda, within such shorter or longer period of time as the court may order, upon written ex parte motion served on all parties.

The present motion was filed on January 23, 2009, and the Court's electronic filing system indicates that notice of the filing of such motion was served upon Stratco's counsel electronically on that same date at 1:38 p.m. CST. More than twenty (20) days have elapsed since the service of the motion, and Stratco has failed to file any opposition. The motion is therefore deemed to be unopposed.

**II.    Applicable Legal Standards:**

Pursuant to Fed. R. Civ. P. 26(b)(1), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. Fed. R. Civ. P. 26(b)(1). For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action, and relevant information need not be admissible at the trial if the discovery appears "reasonable calculated to lead to the discovery of admissible evidence. *Id.*

Fed. R. Civ. P. 33 requires that the party responding to interrogatories must answer each interrogatory separately and fully in writing and under oath, unless an objection is asserted as to the interrogatory. Fed. R. Civ. P. 33(b)(3). If an objection is asserted, such objection must be stated with specificity, and any ground not stated in a timely objection

is waived unless the court, for good cause, excuses that failure. Fed. R. Civ. P. 33(b)(4). Pursuant to Fed. R. Civ. P. 33(d), if the answer to an interrogatory may be determined by examining a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries. Fed. R. Civ. P. 33(d).

Fed. R. Civ. P. 34 requires that a response to a request for production of documents must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons. Fed. R. Civ. P. 34(b)(2)(B). An objection to a portion of a request must specify the portion and permit inspection of the rest. Fed. R. Civ. P. 34(b)(2)(C). If an objection is asserted on the basis of privilege or that it is subject to protection as trial-preparation material, the responding party must: (1) expressly make that claim; and (2) describe (in a privilege log) the nature of the documents, communications, or tangible things not produced or disclosed – and to do so in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the claim of privilege or protection. Fed. R. Civ. P. 26(b)(5).

If a responding party submits an evasive or incomplete disclosure, answer, or response, it must be treated as a failure to disclose, answer, or respond. Fed. R. Civ. P. 37(a)(4). Federal courts have consistently held that documents are deemed to be within the "possession, custody or control" of a party and subject to discovery under Fed. R. Civ.

P. 34 if the party "has actual possession, custody or control, or has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a non-party to the action." *Monroe's Estate v. Bottle Rock Power Corp.*, 2004 WL 737463, *10 (E.D.La. 2004). Furthermore, in responding to discovery requests, a party is "charged with knowledge of what its agents know or what is in records available to it." *Id.* If a party fails to fully answer an interrogatory or request for production of documents submitted under Fed. R. Civ. P. 33 and 34, the party seeking the discovery may move for an order compelling an answer to that discovery request pursuant to Fed. R. Civ. P. 37(a)(3)(B).

## III.   Analysis:[4]

### A.   Interrogatory Nos. 3, 4, and 6:

Interrogatory No. 3 requests that Stratco identify which of the wells operated by Stratco or by Lakehills are producing or, if they are no longer producing, the date(s) on which they ceased producing. Stratco responded to Interrogatory No. 3 by stating that the responsive information is contained in the responses to Interrogatory Nos. 1 and 2, which asked Stratco to identify the wells in which Stratco, Lakehills, Thomas Stratton, or the Stratton Family Trust have an interest or are the operator of record. Stratco also refers Chesapeake to its business records but does not identify specific records that contain the information requested. The Court agrees with Chesapeake that Stratco's response to Interrogatory No. 3 is incomplete, as its responses to Interrogatory Nos. 1 and 2 identified wells that are still producing or for which production has ceased, but they do not specify the date upon which production ceased. Thus, Stratco will be ordered to identify the date(s)

---

[4] The Court will analyze the discovery requests in question in the order in which they were presented in Chesapeake's motion.

on which production of the various wells ceased, and to the extent that information is contained in its business records, Stratco should refer Chesapeake to the specific documents that include that information.

Interrogatory No. 4 requested that Stratco identify the date upon which "each of the wells ceased being operational." The terms, "wells" or "the wells," are defined as those wells referenced in Paragraph 6 of Chesapeake's Original Complaint in this suit, including the Lottie Smith 78-1 well, the Schexnayder 5-1 well, the Grezaffi 19-1 well, the Weyerhauser 19-1 well, and the Weyerhauser SWD well. Stratco objected to this interrogatory on the ground that the phrase "ceased being operational" is vague and ambiguous because most, if not all, of the wells have been off production for various periods since being drilled. Stratco further objected to the interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence "particularly since neither Thomas Stratton, the Stratton Family Trust, nor Lakehills are parties to this litigation."

The Court finds that Stratco's objections lack merit. First, the term "operational" is not overly vague and is one commonly used in the oil and gas industry, as is evidenced by jurisprudence dealing with the industry. *See, U.S. v. Louisiana Land & Exploration Co.*, 2006 WL 851183 (E.D.La. 2006); *Fulmer v. Meade*, 2005 WL 3078720 (Ky.App. 2005). Moreover, the deposition testimony of Thomas Stratton indicates that he understands the meaning of the term "operational" as it applies in the oil and gas industry sufficiently to answer questions during his deposition pertaining to that term. *See*, Mr. Stratton's deposition, Exhibit H to Chesapeake's motion, pp. 175-76. Finally, to the extent the term "operational" could be considered vague, it should simply be given its common, everyday

meaning since it is not defined anywhere in Chesapeake's discovery requests. *See, Johnson v. Kraft Foods North America, Inc.*, 238 F.R.D. 648 (D.Kan. 2006)(The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity. A party responding to discovery requests "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories").

As to Stratco's other objection, the Court finds that the term "wells" is specifically defined in Cheapeake's discovery requests and identifies the five particular wells that are at issue in this litigation. Moreover, the dates upon which those wells "ceased being operational" is relevant to this case since Chesapeake is contending that Stratco owned the wells at the time they ceased operating and therefore had an obligation to properly plug and abandon the wells in accordance with the assignment agreements and Louisiana law.

Interrogatory No. 6 requests that Stratco identify "the date on which Stratco ceased production of each of the wells." Stratco also objected to this interrogatory on the ground that it is vague and ambiguous and that it is "exceptionally broad, in that all wells identified herein have complex individual mechanical and producing histories, and most (if not all) have been temporarily on and off production for various periods since being drilled." Stratco further stated, in response to Interrogatory Nos. 4 and 6, that the "mechanical and producing histories of the subject wells can be determined from the business records (well files) of Stratco, and the burden of deriving or ascertaining such information is substantially the same for Stratco as for Chesapeake." The Court agrees with Chesapeake that the request contained in Interrogatory No. 6 is not overly vague. It specifically asks for the dates upon which each of the wells at issue in this litigation stopped producing oil, and Stratco will be required to produce that information since it is relevant to this litigation. To

the extent that information is contained in Stratco's business records, Stratco must specifically identify the documents within those records that contain the responsive information.

**B.     Interrogatory Nos. 7 and 8:**

Interrogatory No. 7 requests that Stratco identify all sources of income for Thomas Stratton since January 1, 2000 and the approximate amount of each source for each year. Interrogatory No. 8 requests the same information as to Jan Stratton. Stratco objected to both interrogatories on the ground of relevance because neither Thomas Stratton nor Jan Stratton are parties to this litigation. Stratco further responded that the amount that is paid to the Strattons each year can be identified from its business records.

The Court finds that the relevancy objection asserted by the Strattons lacks merit. Thomas and Jan Stratton are the only officers of Stratco, and according to Mr. Stratton's deposition testimony, they commingle their own personal funds with those of Stratco. Specifically, Mr. Stratton testified that he pays his personal credit card bills through Stratco. He further indicated that he does not receive any salary or payment from Stratco, but that Mrs. Stratton receives a monthly payment from the company, depending on her needs and the company's income. According to Mr. Stratton, Stratco pays Mrs. Stratton so that there is "very little" left in Stratco's bank account at the end of the month, even though she only works approximately ten to twenty hours per week. Based upon that deposition testimony, Chesapeake contends that it has a piercing the corporate veil argument, such that the Strattons could be held personally liable for any debts Stratco owes to Chesapeake. This discovery would allow Chesapeake to determine whether such a theory of liability is applicable and whether it should be asserted through an amended complaint. Accordingly,

the requested discovery concerning the sources of income for the Strattons in recent years is relevant or reasonably calculated to lead to the discovery of admissible evidence. Additionally, Stratco's response, referring Chesapeake to its business records to determine the amount of income the Strattons have been paid, is deficient. Stratco will be required to specifically identify those documents within its records that are responsive to Interrogatory Nos. 7 and 8.

### C. Interrogatory No. 9:

Interrogatory No. 9 requests that Stratco identify "all income received by Stratco since January 1, 2007, including the entity or individual making payment, the reason for the payment, and the amount of the payment." While Stratco did not object to this interrogatory, it nevertheless failed to provide a response to it and instead simply referred Chesapeake to its business records. Stratco also failed to produce those business records in an orderly fashion and did not produce any financial information for the year 2008. Stratco will be compelled to specifically refer Chesapeake to documents within the business records produced that include information responsive to Interrogatory No. 9. Stratco shall also supplement its response to Interrogatory No. 9 with the requested financial information for the year 2008.

### D. Request for Production Nos. 39-43:

Request for Production No. 39 requests that Stratco "[p]roduce all well files for the wells. For purposes of [that] request, 'well file' has the meaning testified to by Thomas Stratton at his July 16, 2008 deposition." Request for Production No. 40 seeks "all lease files for the wells. For purposes of [that] request, 'lease file' has the meaning testified to

by Thomas Stratton at his July 16, 2008 deposition." Request for Production No. 41 requests production of "all documents relating to the posting of any bond relating to the wells with the State of Louisiana." Request for Production No. 42 seeks "all documents created by or on behalf of Mack Knapp that relate to any of the wells." Finally, Request for Production No. 43 seeks "all production reports related to the wells." In response to Request Nos. 39-43, Stratco did not object and stated that it "elects to produce non-privileged responsive documents for inspection and copying at the offices of Stratco's counsel in Austin, Texas."

According to Chesapeake's motion, although Stratco produced a number of "well files" in Austin, Texas, those files were for "inactive wells," and Stratco did not produce the "well files" for the five wells that are at issue in this litigation. Chesapeake further points out that, during his deposition, Mr. Stratton testified that he "typically [does not] throw away any well files." *See*, Mr. Stratton's deposition, Exhibit H to Chesapeake's motion, p. 133. Thus, it is likely that such files exist, and even if they are not presently in the possession or custody of Stratco, they are within its "control" and can be demanded from a third party, such as Stratco's counsel. Accordingly, the Court will require Stratco to produce the "well files" for the five wells in question in this lawsuit, and to the extent those "well files" do not exist, Stratco shall certify that fact in its supplemental response to Request for Production No. 39. Similarly, any "lease files" or "documents relating to the post of any bond" concerning the five wells in question are, at the least, within the "control" of Stratco and can be demanded from third parties. As such, those documents should also be produced, and to the extent they do not exist, Stratco must expressly state same in its responses.

The reports created by or on behalf of Mack Knapp, sought in Request for

Production No. 42, are also relevant and discoverable in this litigation. Mr. Stratton testified during his deposition that Mr. Knapp was the pumper for the five wells at issue in this case and that Mr. Knapp issued reports concerning the wells. *Id.*, p. 53. Mr. Strattton indicated, however, that he was uncertain whether such reports are located in his Austin home or whether they are in the possession of a company that he hired to receive such reports and prepare them for the Department of Conservation's records. *Id.*, p. 54-55. Either way, Stratco can certainly obtain copies of those reports upon demand. Accordingly, Stratco will also be ordered to produce copies of those reports, and if they do not exist, to certify same in its response to Request for Production No. 42.

Finally, while Stratco produced some "production records" for the wells in question in its response to Chesapeake's discovery requests (*i.e.*, production records for the Smith 78 #1 well for 2000-2002, for the Weyerhauser #19 well for 2000-2001, and for the Schexnayder well for 1999-2002), it did not produce "production records" for all of the wells in question, and it did not produce the entirety of the "production records" for those wells for which it did produce records. As such, Stratco should supplement its response to Request for Production No. 43 to provide that information, and to the extent such documents do not exist, it must certify that fact in its supplemental response.

    E.  **Request for Production Nos. 1, 3, 12, 14-17, 23-24, 26-29, and 31:**

The above requests seek financial records for Thomas and Jan Stratton personally or for Lakehills, including: credit card statements in the name of Thomas Stratton, Jan Stratton, and/or Lakehills dated January 1, 2000 through the date of production; financial statements for bank accounts and other financial investments held by Thomas Stratton and/or Jan Stratton from January 1, 2000 through the date of production; financial

14

documents for the Stratton Family Trust; monthly statements of property owned by Thomas Stratton and/or Jan Stratton; accounts receivable and accounts payable balances for Lakehills; tax returns filed by or on behalf of Thomas Stratton, Jan Stratton, Lakehills, and/or the Stratton Family Trust from 2000 through 2007; documents showing or related to distributions made from the Stratton Family Trust; and documents showing compensation paid to individuals by Thomas Stratton personally or by Lakehills. Chesapeake contends that such documents are discoverable because they are relevant to its theory that Stratco is the "alter ego" of Thomas and Jan Stratton and that the corporate veil of Stratco is subject to piercing.

In support of its argument that such financial discovery should be permitted, Chesapeake again refers to Mr. Stratton's deposition testimony, wherein he admits to commingling his personal funds with the funds of Stratco. Chesapeake also refers the Court to the "General Ledger" for Stratco for the year 2007. According to that ledger, during the year 2007, $100,384.39 was paid from Stratco's funds on behalf of the Stratton's children to universities, Sallie Mae, and to campus realty companies, and such payments were classified as "loans to shareholder" or "contract labor." Chesapeake points out, however, that the notations on the individual checks evidencing such payments indicate that the payments are "for rent," etc. The General Ledger also reflects payments in the amount of $156,000.00 to Jan Stratton for the years 2006 and 2007, which are classified as payments for "contract labor," even though Stratco has produced no payroll records for Mrs. Stratton.

Chesapeake contends that this evidence of intermingling of funds and siphoning of corporate funds by the dominant stockholders for their personal use is sufficient to warrant

further discovery of the Stratton's financial records to determine whether there are grounds for piercing the corporate veil. The Court agrees. Where factual allegations and specific evidence have been adduced substantiating that an "alter ego" relationship may exist, courts have allowed discovery into financial information to determine whether the corporate veil should be pierced. *See, Del Campo v. American Corrective Counseling Services, Inc.*, 2008 WL 4858502 (N.D.Cal. 2008)(allowing discovery of financial records in order to investigate the plaintiffs' "alter ego" theory, where the plaintiffs came forward with evidence showing that the sole shareholders in the defendant company had manipulated the company for their personal benefit. The plaintiffs sought the financial records in order to show "payment of non-corporate expenses by a corporation, siphoning of funds from the corporation by the dominant stockholder, commingling of funds and other assets, failure to segregate funds of the separate entities, the misuse by an individual of the assets of the corporation, the absence of corporate assets, and the undercapitalization or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another").[5] Accordingly, Stratco should produce the financial

---

[5] *See also, Pearson v. Component Technology Corp.*, 247 F.3d 471, 485 (3rd Cir. 2001)(listing "siphoning of funds from the [ ] corporation by the dominant stockholder" as a factor to consider when determining whether to pierce the corporate veil); *Consolidated Aluminum Corp. v. Alcoa,* Inc., Civil Action No. 03-1055-C-M2, R. Doc. No. 116 (allowing discovery into corporate veil theory because the defendant alleged more than a "mere intangible suspicion" of an alter ego relationship between the plaintiff and its parents/affiliates and instead made reference to specific deposition testimony by a former employee of the plaintiff, which provided a strong inference that the plaintiff's parent/affiliates exercised a substantial degree of control over the operations of the plaintiff); *Laborers Pension Fund v. Bakke Construction Co.*, 1987 WL 19818 (N.D.Ill. 1987)(To pierce the corporate veil on grounds of "substantial injustice," an "actual factual allegation – more substantial than an intangible suspicion," is required before the expense of discovery and depositions is imposed upon the defendant); *Jackam v. Hospital Corporation of America Mideast, LTD*, 800 F.2d 1577, 1579-80 (11th Cir.

information sought in Request for Production Nos. 1, 3, 12, 14-17, 23, 24, 26-29, and 31. Again, if such information does not exist, Stratco shall expressly state that such is the case in its supplemental responses.

   **F.  Request for Production No. 13:**

Request for Production No. 13 requests that Stratco produce "all financial documents for Stratco, including but not limited to cancelled checks, bank statements, monthly statements of property owned, general ledger, check registers, payroll records and payroll tax returns, debt balances, legal bills since incorporation, etc." Stratco did not object to this request and stated that it would produce all non-privileged documents. However, Chesapeake contends that Stratco's response to this request was both "haphazard and incomplete." Specifically, Chesapeake points out that, although Stratco produced credit card statements for credit cards in its name, it only produced those statements for the year 2006, for October-December 2007, and through October 2008. It also failed to produce its 2007 and 2008 income tax returns. While it produced bank statements for its Bank One account for February 2002 through December 2002, for 2003, and for January through September 2004 and for its Treaty Oak Bank account for 2005 and 2007, it did not produce any of its other bank statements, and it only produced cancelled checks for its Bank One

---

1986)(A party is entitled to pursue discovery which would either establish or fail to establish the existence of facts sufficient to justify the piercing of the corporate veil); *Benchmark Design, Inc. v. BDC, Inc.*, 1989 WL 81618 (D.Or. 1989)(allowing discovery of the tax returns of the individual defendants and the defendant corporation to help ascertain the extent and nature of the financial dealings between them); *Edgar v. Fred Jones Lincoln-Mercury of Oklahoma City, Inc.*, 524 F.2d 162 (10th Cir. 1975)(allowing pursuit of discovery to either establish or fail to establish the existence of facts sufficient to justify the piercing of the corporate veil).

account for 2000 through the first half of 2004 and for its Treaty Oak account for 2005 and 2007. Finally, the statements and ledgers that Stratco produced concerning its income and expenses are incomplete and do not cover all years requested.

It is clear that Stratco has not produced all of its financial documents sought in Request for Production No. 13 and that its response to that request should therefore be supplemented. Furthermore, one of the spreadsheets produced by Stratco, dated November 10, 2008, apparently indicates that Stratco has the responsive documents in its possession in electronic form. If that is the case, such documents should be produced, and if such documents do not exist, Stratco shall so state in its supplemental response.

  **G. Request for Production Nos. 49-51:**

The above requests seek all documents reflecting the amount of time worked by Lisa McPhee, Judy French, and Jan Stratton. Stratco objected to the requests on the ground of relevance because they seek documents "regarding persons and/or entities that are not parties to this litigation." Subject to that objection, Stratco indicated that it would produce all non-privileged, responsive documents. It, however, only produced the payroll records of three individuals, a bookkeeper, and two contract laborers for the years, 2006 through 2008. It did not produce any payroll records for Jan Stratton or Judy French; moreover, it did not produce any responsive documents belonging to the employees. To the extent such documents exist and are within Stratco's "possession, custody, or control," Stratco shall produce them, and if not, it shall specifically state such in its supplemental responses.

  **H. Request for Production No. 52:**

Request for Production No. 52 seeks "documents relating to efforts by Stratco to

plug and abandon the wells, including but not limited to communications with Estis Well Service, Van Way, JP Oil Company, Craig Lorio, and/or Steve Little." Again, Stratco objected to this request as seeking irrelevant information regarding parties and/or entities that are not parties to this litigation. The Court agrees with Chesapeake that Stratco's objection to this request is utterly frivolous, as the primary issue in this litigation relates to the plugging and abandonment of the wells in question and whether Stratco has made any efforts to do so. Stratco shall produce all documents responsive to this request, and to the extent no such documents exist, it shall so state in its supplemental response.

      **I.**      **Request for Production No. 53:**

Request No. 53 seeks documents that Stratco plans to introduce at trial. Stratco objected on grounds of relevance, stating that the request seeks documents relating to persons and/or entities that are not parties to this litigation. Again, Stratco has asserted an obviously unmeritorious objection, as there is no way the documents that a party plans to introduce at trial can be considered irrelevant to the litigation. They would not be introduced at trial if they were irrelevant. Accordingly, Stratco will also be compelled to produce all documents responsive to Request for Production No. 53 of which it is aware at the present time.

      Accordingly;

**IT IS ORDERED** that the Motion to Compel Stratco Operating Company, Inc.'s Discovery Responses and Production of Documents (R. Doc. 72) filed by plaintiff, Chesapeake Operating, Inc., is hereby **GRANTED** and that defendant, Stratco Operating Company, Inc., shall produce complete responses to the Interrogatories and Requests for Production of Documents discussed in this Ruling within twenty (20) days of this Order.

Signed in chambers in Baton Rouge, Louisiana, February 20, 2009.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**